Argued February 3, affirmed March 24, petition for rehearing
denied April 21, 1954

## ASHFORD *v.* ASHFORD

249 P. 2d 968
268 P. 2d 382

*Joseph H. Page,* of Portland, for motion.
*Henderson & Dickinson,* of Portland, for appellant.

*Edward A. Boyrie,* of Portland, for intervenor-respondent.

WARNER, J.

This is on the motion of Edna Mae Ashford, defendant-respondent, for an allowance of attorney's fees for services in preparing her brief and appearance of her counsel in this court in a pending appeal in a suit for divorce wherein the defendant wife prevailed in the lower court.

■ The application of the respondent is settled by the authority of *Edwards v. Edwards,* 191 Or 275, 281 et seq. 227 P2d 975, where we held that this court is without authority to make such an allowance. We there said, at page 284:

> "We realize that the rule to which we adhere may at times work some hardship so far as the allowance of attorneys' fees on appeal is concerned, but it is one that cannot be corrected here by judicial fiat. The legislature has conferred upon the circuit courts the power to grant temporary maintenance to the party not in default during the pendency of an appeal to the Supreme Court. § 9-914, O.C.L.A. However, the power to grant additional suit money to cover the costs of such an appeal has not yet been given to the circuit courts or this court."

In terms of our own inclination, we reluctantly deny the relief which the respondent seeks and do so solely for the reasons given in *Edwards v. Edwards,* supra. Her supporting affidavit, if true, delineates a picture of financial hardship and impoverishment which well might deny to the respondent a fair opportunity to adequately present and defend her cause in this court, when the appeal instigated by her appellant

husband is heard here on its merits. The apparent injustice flowing from a want of sufficient power here to make an appropriate answer to respondent's request is accentuated by a record which reveals that the appellant husband is an able-bodied man with a substantial income and by the further fact that a parcel of real property involved in the suit threatens to be lost through a pending mortgage foreclosure; but the course followed concerning this and other meritorious motions of like nature must necessarily continue until the legislative assembly evolves some method which will satisfactorily make provision for the alleviation of conditions reflected by the circumstances here present.

Motion denied.

## ON THE MERITS

*Wilber Henderson* argued the cause for appellant. On the brief were Henderson & Dickinson, of Portland.

*Joseph H. Page,* of Portland, argued the cause and filed a brief for respondent.

Before LATOURETTE, Chief Justice, and LUSK, TOOZE and PERRY, Justices.

TOOZE, J.

This is an appeal by the plaintiff Francis N. Ashford from a decree of divorce entered against him in favor of the defendant Edna Mae Ashford.

Plaintiff and defendant were married at Portland, Oregon, on November 23, 1939. On May 8, 1946, plaintiff filed in the circuit court for Multnomah county a

complaint in which he charged defendant with cruel and inhuman treatment and prayed for a decree of divorce. On August 11, 1946, plaintiff filed an amended complaint, and on May 8, 1947, a second amended complaint, in which he charged that his marriage to defendant was void because, as he alleged, at the time of such marriage "the defendant had another husband, to-wit: one L. A. Mott, living and to whom she was legally married, and that the defendant's marriage with said Mott was then * * * in force and not dissolved or annulled by decree of divorce or otherwise; * * *", and he prayed for a decree declaring his marriage to defendant void.

By her amended answer, defendant admitted her marriage to L. A. Mott on August 7, 1929, but affirmatively alleged that such marriage had been dissolved by a decree of divorce entered in her favor and against said L. A. Mott by the circuit court for Multnomah county, Oregon, on January 11, 1939, and further, that said decree of divorce had never been vacated, modified, or set aside.

There is but one issue presented on this appeal, and that relates solely to the divorce decree entered in favor of defendant against her former husband, L. A. Mott.

In his brief filed in this court, plaintiff states the issue as follows:

"Since respondent admitted a previous marriage status, and relied upon a Divorce Decree as the basis of her eligibility for the second marriage, the question for the Court to decide is whether respondent did establish through that Decree and the records supporting the same a Decree of Divorce that was valid upon its face."

The attack upon the divorce decree in this suit is a collateral, and not a direct, attack, and the decisive

question in this case is whether, under the record, such decree is subject to a successful collateral attack.

Upon the trial of this cause, a duly certified copy of the entire record in the divorce suit of E. M. Mott (the defendant in the instant suit), as plaintiff, against L. A. Mott, as defendant, was offered and admitted as evidence.

The only defect in those proceedings that is relied upon by plaintiff in his attack upon the validity of the divorce decree is the alleged insufficiency of the affidavit filed in support of an order for publication of summons.

The complaint filed in the divorce suit states a good cause of suit; summons was duly issued and placed in the hands of the sheriff of Multnomah county for personal service upon the defendant Mott (with duly certified copy of the complaint); the sheriff returned said summons with his certificate endorsed thereon that "after due and diligent search and inquiry, I hereby return that I have been unable to find the within named defendant, L. A. Mott within Multnomah County, Oregon"; upon the filing thereafter of an affidavit for publication of summons, the court made and entered of record its order for publication of summons and designated in said order the newspaper of general circulation in which such summons should be published, and the time for such publication, all as required by law, and summons was so published; upon the expiration of the time for defendant to answer the complaint, no answer having been filed, nor other appearance made by defendant, the default of defendant was duly entered of record, testimony was taken before the court, and, based thereon, a decree of divorce in favor of the plaintiff was duly entered of record.

Omitting formal parts, the affidavit for publication of summons reads as follows:

"I, E. M. Mott, being first duly sworn, depose and say: That I am the plaintiff herein and have personal knowledge of all the facts; that I am a resident of Portland, Multnomah County, Oregon; that I am a competent witness in all Courts of the State of Oregon; that the complaint in this suit was filed on the 15th day of November, 1938; that I have fully and fairly stated the facts of this case to my counsel and have been informed by him and I believe I have a good cause of suit against the defendant for divorce, as will fully appear from my verfied complaint filed herein to which reference is hereby made, and the said defendant, L. A. Mott, is a necessary and proper defendant hereto as I have been advised by my said counsel after statements made as aforesaid.

"That after the complaint herein was filed, a legal summons was placed in the hands of the Sheriff of Multnomah County, Oregon, together with a duly verified copy thereof and together with a duly verified copy of the complaint, all duly certified to according to law, with directions to the said sheriff to serve the same upon the defendant and the necessary fees were paid to the sheriff to serve the same upon defendant; *that the sheriff returned the same to the Clerk of the Court with his return endorsed thereon; that the defendant cannot be found in the City of Portland, or within the State of Oregon after due and diligent search and inquiry instituted for the purpose of locating him;* that the defendant has no residence, place of abode, place of business, post office address of dwelling house, within my knowledge, in the State of Oregon; that the last known address of the said defendant was when he was living with me at 1934 N. E. 34th Avenue, Portland, Multnomah County, Oregon; that I have not been in communication with defendant for a period of about one year and that the positive place of resi-

dence of said defendant at the present time is unknown to me.

"That the defendant is a necessary party to this suit and this Court has jurisdiction over the subject matter of this suit and over the parties; *that personal service cannot be made in the State of Oregon* and I therefore pray for an order that service be made by publication; that the Sunday Welcome is a newspaper printed and published weekly in Portland, Oregon, and is of general circulation, and which I am advised, and therefore believe, is a paper in which legal notice of publication of service of summons may be made in this State." (Italics ours.)

Based upon said affidavit and the return of the Multnomah county sheriff, the court entered of record the following Order for Publication of Summons (omitting formal parts):

"Upon reading and filing the affidavit of E. M. Mott, plaintiff herein, *and it satisfactorily appearing to the Court that the defendant is not within the State of Oregon and cannot be found therein as appears from the return of the Sheriff, filed herein,* and it appearing from the affidavit aforesaid that a good cause of suit exists in favor of the plaintiff and that said defendant is a necessary and proper party hereto, *and it further appearing that a summons has been issued out of said Court in this suit, and that personal service of the same cannot be made upon the said defendant for the reasons hereinbefore contained and as by the affidavit is made to appear,* NOW, THEREFORE,

"On motion of Arthur B. Baines, plaintiff's attorney, it is ORDERED that the service of the summons in this suit be made by the plaintiff by publication thereof, in the Sunday Welcome, a newspaper published in Portland, Oregon, hereby designated as the paper most likely to give notice to said defendant; that said publication be made at least once a week for four consecutive weeks, the date of the

first publication to be the 26th day of November, 1938, and the date of the last publication to be the 24th day of December, 1938, and shall require said defendant to appear in answer to the complaint herein on or before the 27th day of December, 1938.

"And it further in like manner satisfactorily appearing to the Court that the last known address of the defendant was at the home of the plaintiff, but that the present address of the defendant is unknown and that it cannot be found, IT IS HEREBY ORDERED That the mailing of a copy of the original complaint and a copy of the original summons and a copy of the summons as published is hereby dispensed with." (Italics ours.)

The proceedings for the publication of summons were based upon § 1-506, Oregon Code 1930 (§ 1-606, OCLA, as amended by ch 63, Oregon Laws 1947; ORS 15.120). This statute was made applicable to divorce suits by § 6-111, Oregon Code 1930 (§ 9-112, OCLA; ORS 15.130). In part, the statute provides:

"When service of the summons can not be made as prescribed in the last preceding section, *and the defendant after due diligence can not be found within the state,* and when that fact appears by affidavit *to the satisfaction of the court or judge thereof,* * * * and it also appears that cause of action exists against the defendant, * * *, the court or judge thereof, * * * shall grant an order that service be made by publication of a summons * * *." (Italics ours.)

■ It is the well-established law of this state that in an affidavit for publication of summons every fact must be shown that is necessary under the statute to give the right to an order for service by publication. Probative facts must be stated, it not being sufficient merely to use the words of the statute. It is not sufficient to state generally that after due diligence the de-

fendant cannot be found within the state, or that the plaintiff has a good cause of action against him, or that he is a necessary party; but the acts constituting due diligence or the facts showing that he is a necessary party should be stated. Plaintiff contends on this appeal that the affidavit under consideration here does not meet these requirements, and, therefore, the court acquired no jurisdiction to enter an order for publication of summons. He argues that this defect in the affidavit renders the service of summons, and the decree based thereon, absolutely void. In support of his contention, plaintiff cites and relies upon three prior decisions of this court: *Dixie Meadows Co. v. Kight,* 150 Or 395, 45 P2d 909; *Bagley v. Bloch,* 83 Or 607, 163 P 425; *Felts v. Boyer,* 73 Or 83, 144 P 420.

Each of those cases involved a direct attack upon the decree entered in the suit in which the defective affidavit was filed. The court was not faced with a collateral attack, as we are in the instant litigation. This poses an entirely different problem.

At the outset, it must be conceded that the court which rendered the decree of divorce was then exercising a special power conferred upon it by statute, and not according to the course of the common law. We have frequently said that when exercising a special power conferred upon it by statute, and not according to the course of the common law, a circuit court is a court of special and inferior jurisdiction, and its proceedings in such cases are subject to all the incidents applicable to a court of that type. *Zipper v. Zipper,* 192 Or 568, 574, 235 P2d 866; *Quinn v. Hanks,* 192 Or 254, 233 P2d 767; *Voltz et ux. v. Abelsen,* 190 Or 319, 224 P2d 213, 225 P2d 768; *Garner v. Garner,* 182 Or 549, 189 P2d 397.

However, it must be kept in mind that under the statutes of this state this divorce court of special and inferior jurisdiction is vested with exclusive jurisdiction over the subject of divorce. In 49 CJS 841, Judgments, § 425(3) b, the following rules are stated:

"Nothing is presumed in favor of the judgment of a court of inferior or limited jurisdiction, as against a collateral attack; but the jurisdictional facts must affirmatively appear either on the face of the record, or, according to some authorities, by evidence aliunde, except as to facts required to be spread on the record, and, as a corollary to this rule, it has been held that it is not necessary for defendant to appear in such court and object to its jurisdiction as a prerequisite to challenging such jurisdiction in a subsequent suit. *This rule, however, applies only to questions of jurisdiction as to the subject matter,* for where the jurisdiction has once vested as to such matter, the rules which govern its exercise as to the person, with respect to process, evidence, etc., are generally the same as those applicable to courts of general jurisdiction. *Although the court may be a limited or inferior tribunal, yet if it has general or exclusive jurisdiction* of any one subject, its proceedings and judgments with respect to that subject will be sustained, against collateral attack by the same presumptions which obtain in the case of superior courts." (Italics ours.)

In 49 CJS 830, Judgments, § 422 c, in speaking of substituted or constructive service of process, it is said:

"Failure to comply strictly with the provisions of the statute in some essential and vital particular will deprive the court of jurisdiction, and so expose the judgment to collateral impeachment, as where the published notice is wholly insufficient to warn defendant of the action or to give him the information he is entitled to expect from it, but a mere defect or irregularity in making service by publication will

not have this effect; *nor will the judgment be collaterally assailable although the affidavit on which the order of publication was based was defective or insufficient, or false in fact, and this is especially true where the court has judicially considered or adjudicated its sufficiency."* (Italics ours.)

In support of the emphasized portion of the above rules, the author cites *George v. Nowlan,* 38 Or 537, 64 P 1.

In *George v. Nowlan,* supra, one of the grounds for attack was "that the affidavit for publication and the published summons were insufficient." Chief Justice Robert S. Bean wrote the opinion of the court. After setting forth the substance of the affidavit for publication of summons, Justice Bean, at page 542 of 38 Or, said:

"* * * Based upon this affidavit, 'the verified complaint,' and 'the return of the sheriff,' the court made an order for service upon Stewart and wife by publication. The specific objections to the affidavit are that it does not show that the plaintiff in the foreclosure suit had a cause of suit against the defendants named in such affidavit, and especially against Stewart, the plaintiff in this suit, nor did it show that he had or claimed any interest in the subject matter of the suit, or was a proper or necessary party to a suit relating to real property in the state. *In these particulars the affidavit may be defective, but the decree cannot be impeached for that reason.* The statute requires that certain facts shall be made to appear by affidavit, to the satisfaction of the court or judge thereof (Hill's Ann. Laws, § 56), before an order of publication is made; *and where the affidavit tends to prove such facts, and the court or judge adjudges it sufficient, such adjudication is conclusive in a collateral proceeding*: 17 Enc. Pl. & Prac. 78; *Pennoyer v. Neff,* 95 U.S. 714. The defects in the affidavit re-

ferred to could have been taken advantage of by an appeal or some other direct proceeding, but do not furnish ground for an injunction restraining the enforcement of the decree.'' (Italics ours.)

In *Moore Realty Co. v. Carr,* 61 Or 34, 37, 120 P 742, a suit to quiet title, a collateral attack was made upon a decree entered in a mortgage foreclosure suit. The attack was based upon an alleged defective and insufficient affidavit for publication of summons. This court, after stating that the only question involved was the sufficiency of the service of summons on defendants, said:

''This is a collateral attack by defendant upon the decree, and it must be unavailing *unless the defect in the service is such as to render the decree in the former case absolutely void and not voidable.* Defects in the service, that might be successfully attacked in a direct proceeding, will not be available to the defendant in a collateral proceeding, *unless there is a total absence of notice.''* (Italics ours.)

After discussing and quoting from several authorities, the court continued:

''The rule seems to be that, if there is actually some notice to the defendant, it is sufficient on a collateral attack, and the irregularity or defect in the service or lack of compliance with the statute does not render the judgment void, but merely voidable.

The following cases are all collateral attacks upon judgments or decrees rendered on service for [sic] publication, and it was held in each that, although the service was defective or irregular, it did not render the judgment void, and was sufficient against a collateral attack: [Citing cases].''

We also commented upon the case of *Ricketson v. Richardson,* 26 Cal 149, cited by plaintiff in the instant

suit, and also quoted from by this court in *Felts v. Boyer,* supra, and pointed out that there a direct attack upon a judgment was involved. As to collateral attacks, the court in the Moore Realty Co. case cited and quoted with approval from the cases of *Pennoyer v. Neff,* 95 U.S. 721, 24 L ed 565, and *Essig v. Lower,* 120 Ind 239, 244, 21 NE 1092.

In the note to *Clay v. Bilby,* 1 Ann Cas 923, also quoted in the Moore Realty Co. case, it is stated:

"There is an important distinction between cases where no service of summons is had upon the defendant and those cases wherein there is a service which is defective or irregular.  *  *  *.

"Where there has been a personal service on the defendant, but the service is irregular, the jurisdiction of the court attaches, and the irregularity, while it may be taken advantage of by objections seasonably interposed in some direct manner, does not render the judgment void and subject to collateral attack.

"*  *  *  *  *

"*The same principles are applicable in cases where the service is by publication.* If there is actually some notice, an irregularity in the publication does not necessarily render the judgment void and cannot be taken advantage of collaterally." (Italics ours.)

In *Pennoyer v. Neff,* supra, a case in which there was a dismissal by the lower court for the reason that the affidavit for publication of summons was wholly insufficient to give the court jurisdiction by publication, the Supreme Court said:

"The majority are of opinion that, inasmuch as the statute requires, for an order of publication, that certain facts shall appear by affidavit *to the satisfaction of the court or judge,* defects in such affidavit can only be taken advantage of on appeal, or

by some other direct proceeding, and cannot be urged to impeach the judgment collaterally."

██ The judge in the divorce suit had jurisdiction to pass upon the sufficiency of the affidavit for publication of summons. If defective, he had the authority to refuse to enter an order for publication; he could have permitted an amendment or required the filing of another affidavit. As a condition for an order of publication, the statute requires that certain facts must be made to appear by affidavit "to the satisfaction of the court or judge". It follows, therefore, that, in the first instance, whether the affidavit filed is sufficient is a question that is necessarily addressed to, and must be decided by, such court or judge before an order for publication of summons is made. Jurisdiction to pass upon the sufficiency of the affidavit carries with it jurisdiction to decide erroneously as well as correctly. This is not a case in which no affidavit whatever was filed. The defect in the affidavit under consideration relates to its failure to state just what inquiries were made or what steps were actually taken, in the exercise of due diligence. But it is observed that it does state that defendant had no residence, place of abode, place of business, post-office address, or dwelling house in the state of Oregon, and it further refers to the "not found" return of the sheriff; it also shows that the court had jurisdiction of the subject matter, that defendant in that suit was a necessary party. In its order for publication of summons, the court referred to the affidavit and to the return of the sheriff, and affirmatively stated that it had been made to appear "to the satisfaction of the court" that personal service of summons could not be made or had upon defendant within the state of Oregon, and directed that summons be published. This is not a case where no notice at all was

given to the defendant, nor where the summons as published did not contain everything required by statute. It is conceded that under our decisions the affidavit was defective in failing to show what was done in the exercise of due diligence, but that defect does not render the decree void and vulnerable to collateral attack.

In *Essig v. Lower,* supra, the Indiana court said:

"This is a collateral attack upon these decrees, and unless they are wholly void the attack must fail though they may be erroneous. Had the court proceeded in these cases without any notice, then it would be clear that there was a want of jurisdiction, but it clearly appears, by the special finding, that there was *some* notice, and that such notice was based upon an affidavit. It became, therefore, a question to be determined by the courts in which these proceedings were pending as to whether such affidavits and notices were sufficient. The court having determined that question in favor of jurisdiction, such determination is conclusive as to all the parties when collaterally attacked."

In *Jackson v. State,* 104 Ind 516, 517, 3 NE 863, the Indiana court discussed a large number of cases in which the issue now before this court was under consideration. It said:

"The general rule is thus expressed in Morrow v. Weed, 4 Iowa, 77: 'If there be notice of publication, of whatever of this nature the law requires in reference to persons or other matters, its sufficiency can not be questioned collaterally.' This doctrine was reaffirmed by the same court in Bonsall v. Isett, 14 Iowa, 309, and in Ballinger v. Tarbell, 16 Iowa, 491. The great current of authority runs in favor of this doctrine. [Citing cases.]

"It has long been the rule in this State, that where a court is required to determine whether facts

essential to jurisdiction exist, a judgment that they do exist will be conclusive as against a collateral attack. Evansville, etc., R. R. Co. v. The City of Evansville, 15 Ind. 395. It was said in that case: 'It is a well settled principle, that *where the jurisdiction of an inferior court depends upon a fact which such court is required to ascertain and settle, by its decision, such decision is conclusive.*' The doctrine of that case has been repeatedly asserted, and we cite only a few of the many cases that have adopted and enforced it. [Citing cases.] These cases proceed on the theory that the court has authority to decide all questions, whether affecting the jurisdiction or other matters, and this is the only logical ground upon which they can be maintained. If it be conceded that the court does not by its decision determine the sufficiency of a notice, then it must also be conceded that these cases are wrongly decided, * * *. Once it is granted that these decisions are sound, then the conclusion that the court may settle jurisdictional questions is inevitable. Of course, this rule can not apply where there is no jurisdiction of the subject-matter, or where there is no notice or summons, but it does apply in all cases where there is some notice, or some writ and service, although defective.'' (Italics ours.)

In *Moore Realty Co. v. Carr,* supra, at page 41, the court further stated:

"In 17 Am. & Eng. Ency. Law (2 ed.) at page 1042, the editor considered the question and reached the same conclusion, collating the cases, where it is said, in effect, that the distinction between void and voidable judgments turns upon defective or wrong exercise of the power to render it, and a lack of power. In the former case the court is invested with the power to determine the rights of the parties, and irregularities or defects in the service, unless questioned in a direct proceeding, will be unavailable.''

In *Bull v. Campbell,* 225 Fed 923, 929, the court said:

"It is claimed that the affidavit, which has been set out in the statement of facts, was void because it failed to state what diligence had been used to obtain service on Coulston within the territory, and that he was not to be found in the territory. It may be conceded that, upon an appeal from a decree rendered upon such an affidavit, it would be declared insufficient to warrant an order of the court for substituted service, a question not before us, and therefore not determined; but it would not follow that a decree based upon such an affidavit and order would make the decree absolutely void, so that it could be attacked in a collateral proceeding."

Also see *Butler v. McKey,* 138 F2d 373; 42 Am Jur 80, Process, § 92; 1 Freeman 5th ed 715, Judgments, § 349.

In 1 Freeman, Judgments, supra, the following rule is stated:

"* * * But where the statute requires the affidavit to show to the satisfaction of the court that due diligence was used to find the defendant, it cannot be urged to impeach the judgment collaterally that the affidavit fails to state what diligence, or the degree of diligence, that had been used."

■ The parties to this litigation lived and cohabited together as husband and wife for a period of seven years. Plaintiff knew of defendant's prior marriage and divorce at the time he married her. Every presumption is in favor of a valid marriage. Subdivision 30 of § 2-407, OCLA (ORS 41.360) provides a disputable presumption that "a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage". Public policy demands that the marriage relation be protected, and every reasonable doubt should be resolved in favor of a valid marriage. Unless absolutely void, the decree of divorce

in the former suit should be upheld. We are of the opinion that the defect in the affidavit for publication of summons rendered the decree of divorce at most merely voidable, and not void, and that, as against a collateral attack, it must be held to be a valid decree.

The decree is affirmed.